
RECEIVED
Mail Room

AUG 3 0 2018

United States Court of Appeals
District of Columbia Circuit

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

RODNEY REEP
    Plaintiff


v.                                        No. 18-5132


UNITED STATES DEPARTMENT
OF JUSTICE, et. al
    Defendants

4-LD

## DISPOSITIVE MOTION TO WHICH
## <u>THERE IS GENUINE DISPUTE</u>


### FOIA ISSUE REMAINING FOR RESOLUTION BY THE COURT

    I Rodney Reep, the Declarant, do hereby declare under the penalty of perjury that the hereinafter statements are true and correct to the best of my knowledge.

    This case arises under the Freedom of Information (FOIA), 5 U.S.C. §552, and pertains to the request of Declarant for records maintained by Defendants: Executive Office for the United States Attorneys("EOUSA"), Federal Bureau of Investigation ("FBI"), United States Drug Enforcement

(1)

Agency ("DEA"), and bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), which are all subcomponents of the United States Department of Justice ("DOJ").

1). Complaint against FBI, DEA, and EOUSA is not barred by the Statute of Limitaiton. Plaintiff exhaustion of such administrative remedies is required under the Freedom of Information Act before a party can seek judicial review. Stebbins v. Natonwide Mutual Insurance Co., 244 U.S. App. D.C. 289, 757 F.2d 364 (D.C. 1985).

## FEDERAL BUREAU OF INVESTIGATION.

F.B.I. claim the Plaintiff was barred because plaintiff had six years from June 8, 2009 or until June 8, 2015, in which to file a FOIA action in Federal Court. Plaintiff did not file his complaint until June 23, 2016, more than one year after expiration period. The correspondence letter was September 28, 2010, received from Office of Information Policy Appeal No. 2010-2181, request No. 1128002-001 where the Defendant stated "If you are dissatisfied with my actions on your appeal, you may file a lawsuit in accordance with 5 U.S.C. §552(a)(4)(B)". (See Exhibit A).

## Drug Enforcement Agency

D.E.A. claim the Plantiff was time barred because Plaintiff had until January 29, 2016, six years after the right of action accrued to file a FOIA lawsuit against the DEA. Plaintiff filed this action on June 23, 2016, more than four months after the expiration period.

The Plaintiff filed a second FOIA request on June 21, 2010 (Case no. 10-00888-P). The last correspondence letter was May 12, 2011 (See Exhibit B).

## Executive Office for United States Attorney

EOUSA claim the Plaintiff was time barred because Plaintiff had six years from May 7, 2010 in which to file a FOIA action against DOJ and EOUSA, in Federal Court. Plaintiff did not file his complaint until June 23, 2016, more than one year after the ezpiration period. The last correspondence was May 6, 2010, Appeal No. 10-0166. As part of the 2007 FOIA amendments, the Office of Government Information Service agencies as a non-exclusive alternative to litigation. §303.12(b) and §9901.7 appeals (c) (See Exhibit C).

## D) NATIONAL ARCHIVES AND RECORDS ADMINSTRATION

Office of Government Information Service (OGIS) and Plaintiff had ongoing continued litigations dating April 30, 2010, case No. 10-0166. OGIS has been committed to providing mediator services as part of the 2007 FOIA amendments. (See Exhibit D)

## E) PLAINTIFF IS NOT BARRED BY STATUTE OF LIMITATIONS.

The Plaintiff is expected to present in one suit all the claims for relief that may have arised out of the same transaction or occurance. U.S. Indus. Inc. v. Blake Const. Co., Inc. 246 U.S. App. D.C. 326, 765 F. 2d 195, 205 (D.C. Cir. 1985).

FOIA's purpose to encourage administrative appeal resolution of request requires that you exhaust administrative remedies.

### A-1) F.B.I. CORRESPONDENCE

On March 9th, 2009, the Petitioner initiated a Freedom of Information Act request to the "F.B.I.", pursuant to Title 5 of the United States Code §552(a).  This was the last correspondence with the F.B.I.

On September 28th, 2010, letter from the Office of Information Policy RE: App. No. 2010-2181:  RE No. 1128002/ADK:KRP, stating, "You appealed from the action of the Federal Bureau of Investigation on your remanded request for access to records pertaining to yourself.  Please be advised that I have interpreted your letter dated May 17th, 2010, as limiting your appeal to the adequacy of the F.B.I. search.

### B-1) D.E.A. CORRESPONDENCE

On March 7th, 2009, Petitioner initiated a Freedom of Information Act request to the D.E.A., pursuant to title 5 of the United States Code §552(a).

On May 4th, 2009, I receive a letter from the "D.E.A." Administration staing "This letter responds to your Freedom of Information/Privacy Act (FOIA/PA) request dated March &th, 2009 received by the Frug Enforcement Administation (D.E.A.).  Your request has been opened and assigned case number )9-0650-P.

On October 15th, 2009, I sent another letter to D.E.A. head-quarters, stating "Now it has been over (150) days since I first requested this infromation.

On June 21st, 2010, 2nd request for Freedom of Information Act pursuant to Title 5 U.S.C. §552.  This is my second request.

On July 20, 2010, letter from "D.E.A." RE: 10-00888-P stating, "This letter responds to your Freedom of Information/Privacy Act (FOIA/PA) request dated June 21st, 2010, received by the Drug Enforcement Administration (D.E.A.).

On May 6th, 2011, received letter from "D.E.A." RE: Case No. 10-00888-P previous D.E.A. Case No. 09-0650-P, stating "This letter responds to your Freedom of Information/Privacy Act Unit (SARF), seeking access to information regarding the above subject.

## C-1) U.S.A. CORRESPONDENCE

On March 9th, 2009, Petitioner initiated a Freedom of Information Act request to the U.S.A.O., pursuant to Title 5 of the United  States Code §552(a).

On April 20th, 2010, Pesponse From office of Professional Responsibility RE: C10-00008 stating, "This is in response to your February 23rd, 2010 correspondence to this Office but concerning the Executive Office for the United States Attorneys and your Freedom of Information Act (FOIA) appeal.  We received your correspondcnce to this Office pertaining to this matter.

Your FOIA appeal is being handled by the Office of Information Policy (OIP).  Accordingly, we are referring your corre-

spondence to O.I.P.  Any correspondence concerning the referrel
should be directed to the following address: Office of Infomation
Policy.

On April 29th, 2010, RE:  C10-00008 Letter to Office of Infor-
mation Policy stating to Ms. Marlene Wahowiak, "I received corre-
spondance from you concerning the executive Offices for the United
States Attorney's Freedom of Information Act.  Please be advised
that EOUSA has forwarded me a letter dated April 9th, 2010, which
suggested that I consult with the "office of Government Informa-
tion Services".

On May 6th, 2010,  National Archives and Records Administra-
tion  RE: 10-0166, Letter stated, "Thank  you for contacting the
Office of Government Information Service (OGIS).  This letter is
in response to your letter dated April 16, 2010.  OGIS received
your letter on April 29th, 2010.

OGIS is commited in our role of proving meditation services
and reviewing agency compliance under the Freedom of Information
Act (FOIA).

After reviewing the materials that you have submitted, more
information is needed in order to assist you.

If you would like OGIS to assist your in this way, please pro-
vide your consent as soom as possible by signing and dating the
bolded paragraph at the end of this letter and returning it by
U.S. Mail.  We have included a copy of his letter for your own

(6)

records.  We will not be able to contact the agency until we have received you consent.

At this time, we consider this case closed: however, if you wish to contact us again, please refer to Case No.  10-0166 and we will reopen your case.

### 2)  A CLAIM FOR RELIEF § 702. RIGHT OF REVIEW

U.S.C. §702. A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.  An action in a court of the United States seeking relief other than money damages.

2 A) A claim for relief the plaintiff connot receive monetery damages but it can be awarded for attorney fees and filing cost.

### 28 U.S.C. § 2401(a)

2 B) The government is using 28 U.S.C. § 2401(a) to claim that Plaintiff passed the six (6) year statute of limitaition. But 2401(a) is inapplicable to FOIA.

2 C) The Plaintiff refiled his request June 2010, and this in itself restart the process.

2 D) I sent my Freedom of Information complaint seeking disclosure to the District court of Columbia on May 20th, 2016, which they received on May 23rd, 2016.

### 3) THE DEFENDANT FAILED TO KEEP AN ACCURATE ACCOUNTING OF DOCUMENTS.

Plaintiff alleges that the D.E.A., A.T.F., and U.S.A.O. failed to keep an accurate accounting of disclosure they had made during their investigation of Plaintiff.

### 4) 5 U.S.C. §701-706

Plaintiff asserts that jurisdiction is conferred on this Court by 5 U.S.C. §701-706(Administrative Procedure Act).

The APA provides that a "person suffering legal wrong because of agency action, or adversely affected by agency action within the meaning of a relevat statute" is entitled to judicial review of such a claim. 5U.S.C. §702 and 706. "In makeing the forgoing determinations, the court shall review the whole record.. .".

### 5) PLAINTIFF ARGUES THAT DEFENDANTS' SEARCHES WERE INADEQUATE.

The defendant failed to complete the required searches, to conduct a thorough search to comply with FOIA. See <u>Olesby v. U.S. of the Army</u>, 268 U.S. App. D.C. 126, 920 F. 2d 57, 68 (D.C. Cir.) The Defendant failed to fulfill their obligations under the FOIA to uncover all relevant documents. The defendant explained in detail, setting forth the search terms they used and the type of methods;"N-force" and the TREASURY ENFORCEMENT COMMUNICATION SYSTEM (TECS"), NATIONAL CRIME INFORMATION CENTER (NCIC) and NATIONAL LAW ENFORCEMENT TELECOMMUNICATION SYSTEMS (NLETS). The search perfo-

rmed in order to discover the material. After search performed it was inadequate due to Plaintiff did not receive the requested date in which the Grand Jury convene for original indictment and date the Grand Jury convene for original indictment and date the Grand Jury issued that superceded the indictment (quoting <u>Truitt v. Dept. of State</u>, 282 U.S. App. D.C. 86, 897 F.2d 540, 542 (D.C. Cir. 1990)), the agency "must make a good faith effort to conduct a search for the requested record, using methods which can be reasonably expected to produce the information requested. Petitioner contends that each defendants search and disclosure, or look thereof if the documents and/or records requested amounted to be deemed adequate, because whe appealed to the "OIP", their response was to remand back to the ALCOHOL, TOBACCO, FIREARMS (A.T.F.) the initial request for the search and disclosure of non-exempt documents and records.

### 6) PLAINTIFF REQUESTING INFORMATION PERTAINING TO THE FOLLOWING DATES.

Defendant released some dates in the January 31st, 2017 package of records including, dates for the public voucher, dates for advance of funds and date for [ROI][Report of Investigation] partially. Withhold dates included [ROE][Reports of Expenditures], Request for advance of Funds, Application and Public Boucher for Reward and date in which the Grand Jury convened for original indictments returned against Plaintiff in the case of <u>United States</u>

Filed: 08/30/2018    Page 10 of 46

Document #1748426

USCA Case #18-5132

v. Rodney Reep, Case No. 2:02-CR_217. Certain documents released by the A.T.F., U.S.A.O., and the D.E.A. to Plaintiff consisted of redacted information, specifically dates that cannot reasonably fall within the perimeters of any exemptions.

    Unless the government can demostrate the disclosure of the
    Jury's meeting date and the Grand Jury convened would tend to reveal the inner workings of the Grand Jury investigation, that date is not exempt from disclosure under the FOIA's third exemption. See Lopez v. Dept. of Justice, 393 F.3d 1345, 346 U.S. App. D.C. 274 (2005 U.S. App.) .


### 7) DEFENDANT EXEMPTION UNDER 552(b)(7)(D) MUST ESTABLISH THAT THE PARTICULAR SOURCE SPOKE WITH THE UNDERSTANDING THAT THE COMMUNICATION WOULD  REMAIN CONFIDENTIAL.

    Exemption 7(D) of the freedom of Information Acts Protects records or information complied for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to disclose the identity of a confidential source. 5 U.S.C. §552(b)(7). A source counts as confidential if the source provided information under an express assurance of confidentiality be inferred.

    If an agency attempts to withhold infromation under the Exemption(b)(7)(D)-1 claiming express assurances of confidentiality, "the agency is required to come forward with probative evidence

that the souce did in fact receive an express grant of confident-
iality". <u>Davin, 60 F.3d at 1601</u>.  Such evidence may take many forms,
such as notations on the face of the withheld account.

### 8) DEFENDAT REFERRED DOCUMENTS TO OTHER AGENCIES.

Plaintiff objects to the treatment of documents the E.O.U.-
S.A. subsequently referred to the A.T.F. and the F.B.I. for final
disposition, rather than releasing them or citing exemptions di-
rectly.

The E.O.U.S.A. should not simply refer documents to the other
agencies as a matter of course, but must show that the procedure
is reasonable under the circumstances, rather than engaging in
"consultation".

After final release on October 29th, 2009, the defendants on
December 1st, 2009, referencing material was located in these re-
ferred documents which originated with the U.S.A.O. These agencies
have been requested to process and correspond directly with Plain-
tiff regarding their documents.  <u>Id</u>. n.4. Plaintiff complains that
he "has not been provided with a <u>Vaughn</u> index or any inventory or
accounting of these referrals", so he has "no way of knowing what
materials remained unaccounted for.

(11)

## 9) RULE 6(e) AS STATUTE UNDER EXEMPTION 3.

The scope of Rule 6(e) is relevant statute within the meaning of FOIA exemption 3. There are four exceptions to the general rule of secrecy enumerated in the rule. The first two, involving limited disclosure to government attorneys and other personal, are cleary inapplicable. The remaining two permit disclosure pursuant only to a court order. The fourth permits disclosure to a criminal defendant for use in preparing a motion to dismiss an indictment. Rule 6(e)(3)(C)(ii). The only exception even arguably applicable to the present proceedings is that which permits disclosure in civil proceedings.

Grand Jury Fed. R. Crim. P. 6(e)(3)(C).

Plaintiff contends that the requested Grand Jury transcripts should be disclosure pursuant to Federal Rule of Criminal Procedure 6(e)(3), which provides for the disclosure of Grand Jury stage, which would provide support for his contention that his criminal conviction was based upon false evidence contrived by the goverment.

Moreover, the Fed. R. Crim. P. 6(e)(3)(C) was not strong enough to resist the force of the U.S. Constitution Amendments. Exemption 3, U.S.C. §552(b)(3) permits an agency to with hold information "specifically exempted from disclosure by statute." The Government contended that the documents were exempted from disclosure under Rule 6(e) of the Fed. R. Crim. P. Rule 6(e)

(12)

progibits, with exceptions, the disclosure of matters "occuring before the grand jury," in biolation of the Fifth Amendment.

(A). The most valuable function of the Grand Jury is not only to examine into the commission of crimes, but to stand beween the Prosecutor and the Plaintiff.

(B). In Plaintiff's request to obtain certain information, dates for Grand Jury records unexplained and the date of the preliminary witness interviews, are not exempt from disclosure. Because dates on which prosecutors interviewed, either as part of a screening process in advance or the actual Grand Jury testimony, do not inherently reveal secret matters occuring before a Grand Jury.

(C). Plaintiff request no names but dates the Federal Grand Jury convened, and for the superceding indictment date. Also for the dates that withness statements were given, or indications that he or she signed the statements, under penalty of pejury, "sworn declaration" or "unsworn declaration". Also, dates for public boucher, withness boucher, and the request for the advance of funds.

(D). [FOIA]- exemp information loses its protection if it was previously "disclosed and preserved in a permant recor," Cittone v. Reno, 193 F.3d 550, 553-54, 338 U.S. App. D.C. 270 (D.C. Cir. 1999). Unless the government can cemostrate that disclosure of the date of a particular preliminary interview would tend to reveal the inner workings of the Grand Jury investigation, that date is not exempt from disclosure under the FOIA's third exemption. Exemption 3 is not exempt **the dates the Grand Jury issued its indictments.** See Lopez v. Dept. of Justice, 393 F. 3d. 1345, 346

U.S. 274 (2005 U.S. App.).  <u>Lazaridis v. Dept. of Justice</u>, 766 F.

Supp. 2d 134 February 24th, 2011.  <u>Peay v. Dept. of Justice</u>, 2007

U.S. Dist. LEXIS 17586.

    **E).** **"GRAND JURY exhibits,** reveal information discussed before

the Grand Jury, and were created for the purpose of the investi-

gation at issue."  While this may be true, "[t]here is no per se

rule against diclosure of any and all information which has reac-

hed the Grand Jury Chambers."  <u>Senate of the Commonwealth of Puer-</u>

<u>to Rico v. U.S. Dept. of Justice</u>, 262 U.S. App. 166, 823 F.2d 574,

582 (D.C. Cir. 1987).

    **F). FOR RULE 6(e) to be applicable,** "the touchstone is whet-

her disclosure would tend to reveal some secret aspect of the

Grand Jury's investigation.

    **G). RULE 6(e) as a Statute under Exemption 3.**  The scope of

Rule 6(e) is a relevant statute within the meaning of FOIA Exemp-

tion 3.  There are four exeptions to the general rule of secrecy

enumerated in a rule.  The first two, involving limited disclosure

to government attorneys and other goverment personal, are clearly

inapplicable.  The remaining two permit disclosure to a criminal

defendant for use in preparing a motion to dismiss an indictment.

Rule 6(e)(3)(C)(ii).  The only exemption even arguably applicable

to the present proceeding.  Fed. R. Crim. P. 6(e) does not draw a

veil of secrecy over all matters occuring in the world that happen

to be investigated by a Grand Jury.  Instead, the "touchstone" is

whether the information sought would reveal something about the

grand jury's identity, investigation, or deliberation.  The mere fact that information has been presented to the grand jury does not itself permit withholding.  Plaintiff arguing that the defendants had not carried their burden of establishing affirmatively that interfere with the federal prosecution of a 15 year old conviction.

## 10) THE PLAINTIFF CHALLENGES THE DENIAL OF ACCESS OF RECORDS. FOIA EXEMPTION 6, 5U.S.C.(b)(6)

Which protects personal and medical files and similar files, some other information currently protected by regulation No. 1 Pay ment to individual in advance of funds make available, by the Treasury Department for the Government Program Project Exile. The Plaintiff is not requesting any medical records.

## 11) THE DEFENDANT'S WITHHELD THE NAME OF THE INVESTIGATORY.

The defendants under exemption 6 and 7(c) of the FOIA, U.S.C. §552(b)(6) and 553(b)(7)(C), the Defendants could not withhold the names of Agent Jay D. Seacrist who conducted Investigatory, ATF Task Porce.  Receiving public vouchers and rewards.  It was this agent that transferred this case from state custody to federal custody.  Because there was no showing that disclosure of his name could be reasonably expected to result in unwarranted invasion of personal privacy.  United Am. Potter, (2009, D.C. Dist.) 667 f. Supp. 2d 49

**12) SEGREGABILITY ISSUE BEFORE THE DISTRICT COURT.**

The DEA, USOA, and the ATF had determined to withhold reques-
ed information.  The agencies have the burden of showing that a
statutory exemption applies.  Id. Moreover, any reasonably segre-
gable portion of a record must be made available to the person
requesting the record.  5U.S.C.§552(b).  If the District Court's
conclusion that withholding of information is lawful under FOIA in
the face of possible redaction, the district court must make spec-
ific findings of segregability regarding the documents to be with-
held.

**13) DEFENDANTS FAILED TO HAVE A CORRECT VAUGHN INDEX.**

Plaintiff moves to compel defendants to serve an unredacted
index, with dates and names of investigators.  Plaintiff compl-
ained specifically that,  "the Index fails to include the date of
each document provided."  Defendants failed to explain why the date
of the reports of investigation should be deleted.  Plaintiff asked
that defendants be directed to provide a more detailed Index.
Plaintiff request specifically the exemption claimed to the dele-
tion of the dates and names(including the names of the investiga-
tors) in each document.

**A) Plaintiff is requesting an unredacted copy of the Vaugh**
Index.  The review of the FOIA cases "is made difficult by the
fact that the "ATF" Document Cover Sheet: Exemption List and
Appeal Rights Number 6, states total number of documents denied,
all show zero.  (See Exhibit E).  The Petitioner seeking disclosure
does not know the contents of the information sought and is, ther-
efore, helpless to contridict the government's description of the
information or effectively assist the trial judge in order to

"transform a potentially indffective inquisitorial proceeding against an agency that controls information into a meaningful adversarial process", Plaintiff requesting the reviewing Court to order the government to prepare a particularized discription of how each document withheld falls wihtin the statutory exemption.

14) **Plaintiff challenged this claim, arguing that Exemption 7(C) does not protect the privacy of people who are deceased.**

The DEA and the FBI didn't apply to the decease rules of information.  I didn't receive the report of Investigation, file No.GE-00-0038 and prepared date: 12/12/02.  Report of Investigation.  File deceased by definition cannot personally suffer privacy-related injuries that may plague the living.  I didn't receive the report of the deceased, Karl Moore Jr. DEA and FBI Report of Investigation, File No. GW-00-0038, prepared date: 8/27/02, 10/31/02, 12/12/02 and 01/06/03.

15) **Defendants have not met its obligation under FOIA. That there is genuine issues of material fact are in dispute.**

A) **Petitoner received a letter from Office of Information Policy.**

Dated April 26, 2011.  Appeal No. AP-2011-00217, Request No. 10-1142 KWC: AEC.  You appealed from the action of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) on your request for access to records pertaining to yourself.  I note that you specified the case numbers 768025-02-0042 and 768025-03-0042.

With regard to your question about the research for records
pertaining to case number 768025-03-0042, as a result of discus-
sions between ATF personal and a member of my staff, I have deter-
mined that ATF's response was correct.  The case you provided is
not an Identifier for you.  If you are dissatisfied with my action
on your appeal, you may file a lawsuit in accordance wiht 5U.S.C.
(a)(4)(B).  See Exhibit (EE).

**B) Petitioner filed a letter going to the Office of Information
    Policy.  October 10, 2010. Reference No. 10-1141:JMP**

This appeal concern ATF Records with reference to the above
stated reference number" 10-1142:JMP.  The correct case number is:
"768025-02-0042" and "768025-03-0042".  These correct numbers
which I requested is to be searched for information, pertaining
to myself.  The numbers they claim don't belong to me are docu-
mented on two sheets" Department of Treasury, Request for Advance
Funds.  See Exhibit "F".


**16) Plaintiff challenges the assertion of 5U.S.C. §552(b)(7)(C),
    Exemption 7(c), and the agencies' desicion to withhold records
    under this exemption.**

The purpose of the FOIA is to protect "the citizens' right
to be informed about what their government is up to".  United States
Dept. of Justice v. Reports Comm. for Freedom of the Press, 749,
772, 109S.Ct. 1468, 103 L.Ed2d 774 (1989), exposing improper conduct
by agency officials in the interest that comports with the purpose
of FOIA.

## A) LEGAL ANALYSIS

When Congress enacted the FOIA, it sought "to open agency action to the light of the public scrutiny." <u>Dept. of Air Force v. Rose</u>, 425 U.S.352, 361, 96S.Ct. 1592, 48 L. Ed. 2d 11 (1976) (citation ommitted). The basic purpose of the Act was to reflect "a general philosphy of full agency disclosure", but rather serves to "shed light on the agency's performance of its statutory duties." <u>U.S. Dept. of Justice v. Reporters Comm. for Freedom of the Press.</u> Exposing improper conduct by agency officials is an interest protected by Exemption 7(C) and the public interest that comports with the purpose of FOIA. "[W]here there is privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties."

As it relates to 5U.S.C. §552(b)(7)(C), when reviewing an agency's decision to wihholc records under this exemption, the Court must "weigh the public interest in the release of information against the privacy interest nondisclosure." <u>Shrecher v. Dept. of Justice</u>, 538U.S. App. D.C. 334, 349 F.3d 657, 661 (D.C. Cir. 2003)(citing <u>Dept. of Justice v. Reporters Comm. for Freedom of the Press</u>). The District of Columbia Circuit has instructed that "the public interest in disclosure must be evaluated in the light of FOIA's central purpose" to open agency action to the light of public scrutiny."

**17) The record demostrates that there is genuine issue of material fact in dispute.**

The Plaintiff express his concern regarding the implications that prosecutor, Ms. Dverhart, decided not to share this information, and withheld this information from Plaintiff and his lawyer, Andrew M. Sachs, fatally undermining Plaintiff's Brady rights. See Skinner v. Switzer, 131 S.Ct. 1289, 1300, 179 L.Ed 233(2011).

**A) Division of Forensic Science, Certificate of Analysis, January 16, 2002.**

Case No. 01-54178, FS Lab#To1-12924, evidence submitted by C.E. Payne. Boxes of Winchester, 45 auto cartridge items 2A-2H. Results" Two (2) latent fingerprints of value for identification purposes were developed as follows:

Item 2A- Plastic insert- One (1) latent fingerprint.

Item 2B- Plastic insert- One (1) latent fingerprint.

Page 2" Leland W. Kennedy, forensic Scientist. (See Exhibit"1A").

See page 207 of FOIA packet received by Plaintiff from ATF.

**B) Division of Forensic Science, Certificate of Analysis, May 7, 2002.**

Evidence submitted by [b2/7c Exemption].

Item 4: Photocopies and fingerprints & palm prints..

Results: One (1) latent fingerprint of value for indentification purposes remained unidentified as previously reported in this case.

[Exemption b2/7c]

Forensic Scientist

See Exhibit "2A".

C) Report of Investigation

Page 1 of 1, Report number 2

Description of activity" attempt to fingerprint Rodney Reep. On May 9, 2002, Task Force Agent Jay D. Seacrist, See Exhibit "3A".

D) **Report of Investigation "DEA" Page 1 of 4.**

File No. CW-00-0038, Prepared date" 10/31?02, DEA form 6. the DEA conducted a trash-pull where agents removed trashcans from the property themselves without a warrent on August 22, 2002 and October 31, 2002. All information on the trash-pull is available on report of Investigation. See Exhibit"4A".

E) **Trial Exhibit List**

Criminal number 2:02-CR-217, in the United States District Court for the Eastern District of Virginia, Norfolk Division, Exhibit 10 is listed as "Photos from 10/31/02 trash-pull." There are five (5) photos, listed as 10(A-E). The photos that were used as exhibit 10A-E, they were in Plaintiff's possession located on top of a china cabinet. Government alledges they came in posse-ssion of the photos during a trash pull.

See Exhibit "5A".

F) **United States Attorney Ms.Everhart Changed the Ammunition Count to a Firearm Charge.**

See transcripts of arraingment proceedings of March 19, 2003. See Exhibit

Page 10 at Line 13, Felon in Possession of a Firearm:
Page 10 at Line 20:

Mr. Sacks: "Your Honor, that firearm charge(Page 10 Line24)-"

The Court: "Felon in Possession of a firearm, Count 29."

At page 11, line 19, Ms. Everhart does not speak of ammunition as opposed to a firearm, Page 11 at line 25, the Court does not contain a referance to Count 29.

      G) **Transcripts of Closing Argument, July 17, 2003.**

At page 24, line 24 Ms. Everhart stated "also being a felon in possession of a firearm." See Exhibit "8A".

H) **Firearm Technology Branch Report of Techinical Examiniation Dated March 24, 2003, and Evidence Transmittal form Dated March 4, 2003.**

See Exhibit.

When Plaintiff was arrested I recieved an ammunition charge, when Ms. Everhart took the case the ammunition charge changed to a firearm charge. Jay D Seacrist (ATF) requested the Firearm Technology Branch report and examination of a shotgun under Plaintiff's name and case number 768025-02-0042.

18) **Plaintiff challenges the exemption 5U.S.C.§552(a)(J)(2) that the Justice Department Regulation Promulgated pursuant to the government program "Project Exile."**

Project Exile, Aricle IV., Office of Justice Programs (OJP)

Department of Justice relatin to the implemntation and execution of its "Project Exile" program. Justice Department agency charged with assisting state and local governments with developing more efficient and effective crime prevention and control measures. OJP works with Federal, State, and Local government officials to control drug abuse and trafficking, rehabilitate crime-ridden neighborhoods, improve the administration of justice, meet the needs of crime victims, and find new ways to address

problems such as gang violence, prison crowding, juvenile crimes, and white-collar crimes.  Most of the work is accomplished through grants.

(A)    Project Exile involved a series of monthly meetings between the United States Attorney's Office(hereinafter, "USAO") and the District Attorney's Office.

(B)    Project Exile aslo involved instances where the local police department would call the ATF and ask them to present the case to the USAO.  In addition, there was a Violent Crimes Impact Task Force, wher the ATF was embedded into a task force.

(C)    Project Exile is widely publicized on television, radio, billboards, and buses.  A professional advertising agency is responsible for this publicity.  The advertising agency is paid with private funds donated by the "Project Exile Citixen Support Foundation".  However, excepting these relatively insignificant items, federal taxpayers pay for every Project Exile prosecution.

(p)    Disclosure would serve the strong public interest in the accountability of government programs, revealing how public funds are spent and the extent to which funds are paid to individuals when acting as an ATF agent-even though they are only local police, being paid by their own municipality-and receiving public vouchers and rewards from the Department of the Treasury, such as Norfolk Police Officers Jay D.

Filed: 08/30/2018

Document #1748426

USCA Case #18-5132

Seacrist. In the enforcement process, a scheme injecting a Personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision.

(E) Clifford D. Posey, a Norfolk Police officer assigned to an ATF task force, pled guilty to five counts against him-one each of wire fraud, embezzlement, possessing stolen firearms, filing and making a false statement, and money laundering. He used proceeds for various purposes that were not authorized by the ATF. He had been on the ATF task force for five years.

(F) History of "Project Exile" can be read at paragraph **Case 1:16-cv-01275-RCL Document 1 Filed 06/23/16 Page 28 of 42.**

## PRAYER FOR RELIEF

Plaintiff requests the Court of Appeals to
grant the following relief:

A)  Have an evidentiary hearing to determine if there is going
to be a trial.

B)  Order defendants immediately to process the requested rec-
ords in their entireties.

C)  Order defendants, on completion of the expedited processing,
to disclose the requested records in their entireties and
make copies available to the Plaintiff.

D)  Request the District Court to conduct a camera review of the
records.

E)  Declare defendants' withholding of records to be unlawful,
whether defendants change their positions and voluntarily
agree to produce the records listed in the above Counts, or
the Court issues an order requireing the defendants to do so.

F)  Issue an injunction ordering defendants to produce the above
records listed in the Counts and in the Paragraphs.

G)  Award Plaintiff its reasonable costs, litigation expenses,
and attorney's fees associated with this litigation, as pro-
vided by 5 U.S.C. §552(a)(4)(E).

H)  Grant such further relief as the Court deems just and proper.

Rodney Reed
#53762-083
FCI Schuylkill
P.O. Box 759
Minersville, PA 17954-0759

(25)

Exhibits of document is already registered with the District Courts.

## CONCLUSION

Plaintiff is not barred by the statute of limitation Defendants have not met its obligation under FOIA. The Plaintiff is requesting the Court to grant summary judgment in his favor.

I declare under the penalty that the foregoing is true and correct to the best of my knowledge.

Plaintiff is requesting to be remaned back to District Court for evidental hearing & oral arguments.

Executed on August 27, 2018.

Respectfully Submitted,

Rodney Reep
#53762-083
FCI Schuylkill
P.O. Box 759
Minersville, PA 17954

<u>CERTIFICATE OF SERVICE</u>

I, Rodney Reep, under the penalty of perjury, hereby certify that on this 27th day of August, 2018, I placed an envelope containing the original and four (4) copies of the proceeding documents in the contro of prison authorities by dispositing the envelope in the institution mailbox designated for all outgoing legal mail, addressed to the following:

United States Court of Appeal
District of Columbia Circuit
333 Constitution Avenue, N.W.
Washington, DC 20001-2866

U.S. Department of Justice
United States Attoney, District of Columbia
Judiciary Center
555 Fourth Street, N.W.
Washington, DC 20001

Therefore, in accordance with the federal rule governing filing procedures and the "mailbox rules" established in <u>Houston v. Lack</u>, 487 U.S.266 (1988), the foregoing documents are deemed "filed" for the purpose of this action.

Respectfully Submitted,

Rodney Reep

Filed: 08/30/2018

Document #1748426

USCA Case #18-5132

# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

## TABLE OF CONTENTS OF EXHIBITS

| Ex. # | Exhibit Title/Appendix Description | Notes |
|-------|-----------------------------------|-------|
| 1 | Appendix Exhibit USA TODAY Newspaper Article | Project Exile Newspaper Article By:Brad Heath (reporter)USA TODAY <br><br> Project Exile was responsible for prosecution |
| 2 | Complaint Seeking Disclosure Under FOIA United States District Court For The District Of Columbia | Peceived by the Mail Room May 23, 2016 |
| 3 | Certificate of Mailing to United States District Court | Placed in Institutional Mailbox on 20th of May, 2016 |

Filed: 06/30/2018    Document #174x#26    USCA Case #18-5132

Ex. 12    Exibit List of Criminal
Docket No. 2:202-cr-217
United States District
Court for the Ezstern
District of Virgina
Norfolk Division

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Norfolk Division

UNITED STATES OF AMERICA

v.                                CRIMINAL NO. 2:02cr217

KARL MOORE, SR., ET AL

## EXHIBIT LIST

| ADMITTED | EXHIBIT NUMBER | DESCRIPTION |
|---|---|---|
| | 1 | A.  Photo - vehicle (5/2/01) |
| | | B.  Photo - license |
| | | C.  Photo - console |
| | | D.  Photo - money |
| | | E.  Photo - Money |
| | 2 | A.  Postal labels - Bob Gillham to Lisa Gillham |
| | | B.  Postal labels - Shelina Moore to Karl Moore |
| | | C.  Postal labels - Mr. Moore to Mr.Smith<br>Postal labels - Willie Lee Jones to Darrell Jones |
| | | D.  Postal labels -  ? to Darrell Jones<br>Mr. Gillham to Lisa Gillham<br>(need originals) |
| | 3. | A.  Photo of Wilkerson (Tennessee) |
| | | B.  Photo of Smith (Tennessee) |
| | | C.  Photo of money (Tennessee) |
| | | D.  Photo of money (Tennessee) |
| | | E.  Photo of money (Tennessee) |
| | | F.  Photo of money in trunk |

| ADMITTED | EXHIBIT NUMBER | DESCRIPTION |
|---|---|---|
| | | G. Photo of speakers |
| | | H. Karl Moore Arizona ID card |
| | | I. Photo of Smith, Moore, Wilkerson O.L. (need originals) |
| | 4. | A. Moore - Tennessee conviction order |
| | | B. Moore - Clemency report (need) |
| | 5. | A. Western Union Records |
| | | B. Western Union Chart (not marked) |
| | 6. | A. Delta records (not marked) |
| | | B. Southwest records (not marked) |
| | | C. Flight analysis |
| | 7. | A. ~~Drugs from~~ JR |
| | | B. Request |
| | | C. Certificate |
| | | ~~D.~~ |
| | | E. Request |
| | | F. Certificate |
| | | G. Search Warrant |
| | | H. 14 letters |
| | | I. ~~Drugs from bathrobe~~ |
| | | J. Packaging |
| | | K. ~~Drugs from bathrobe~~ |
| | | L. Packaging |
| | | M. ~~Drugs from bathrobe~~ |
| | | N. Packaging |
| | | O. ~~Drugs from Reep~~ |
| | | P. Request (need completed) |

| ADMITTED | EXHIBIT NUMBER | DESCRIPTION |
|---|---|---|
| | | Q. Certificate |
| | | R. Dollar bill |
| | | S. Request (not marked) |
| | | T. Certificate (not marked) |
| | | U. Scale |
| | | V. Request |
| | | W. Certificate |
| | | X. Reep's driver's license |
| | | Y. Packaging material |
| | | Z. Ammunition w/print (positive) |
| | | AA Ammunition w/print |
| | | BB. Ammunition |
| | | CC. Ammunition |
| | | DD. Ammunition |
| | | EE. Ammunition |
| | | FF. Ammunition |
| | | GG. Ammunition |
| | | HH. Fingerprint card |
| | | II. Fingerprint card |
| | | JJ. Request |
| | | KK. Certificate |
| | | LL. Fingerprint card |
| | | MM. Request |
| | | NN. Certificate |
| | | OO. Certificate |
| | | PP. Photo - house |

| ADMITTED | EXHIBIT NUMBER | DESCRIPTION |
|---|---|---|
| | | QQ.  Photo - drugs in robe |
| | | RR.  Photo - drugs from robe |
| | | SS.  Photo - scale |
| | | TT.  Photo - money |
| | | UU..  Photo - money and packaging |
| | | VV.  Stipulation (not marked) |
| | 8. | A.  Drugs (Highter buy) |
| | | B.  Certificate |
| | | C.  Cup |
| | | D.  Phone records (Highter) |
| | | E.  Phone record (Moore) |
| | | F.  Subscriber information |
| | | G.  Chart (not marked) |
| | | H.  Chart (not marked) |
| | 9. | A.  Flight documents - 8/8/02 money seizure |
| | | B.  Photo - Karl Moore, Jr. - need original |
| | | C.  Photo - money in bag - need original |
| | | D.  Photo - package - need original |
| | | E.  Photo - package - need original |
| | | F.  Photo - magazine - need original |
| | | G.  Photo - magazine - need original |
| | | H.  Photo - money in packages - need original |
| | | I.  Photo - money out of packages - need original |
| | 10. | Photos from 10/31/02 trash pull |
| | | A.  Moore, Jr. on Reep's couch |
| | | B.  Reep's son - Andrew |

| ADMITTED | EXHIBIT NUMBER | DESCRIPTION |
|---|---|---|
| | | C. Moore, Reep, 2BF |
| | | D. Reep, 2 BF |
| | | E. Moore, BF |
| | 11. | A. Search warrant - 11/06/02 |
| | | B. Drugs |
| | | C. Certificate |
| | | D. Photos (?) |
| | 12. | A. Janitorial contract - 11/09/98 |
| | | B. Janitorial contract - 11/14/02 |
| | 13. | A. Settlement Statement |
| | 14. | A. VEC records - Karl & Sheryl Moore, Reep (?) |
| | | B. Arizona Employment Records - Karl & Sheryl Moore, Smith |
| | 15. | A. NAEFCU records (not marked) |
| | | B. Bank of America (not marked) |
| | | C. Bank of Hampton Roads (not marked) |
| | | D. BB&T (not marked) |
| | | E. V.B.M.E.F.C.U. (not marked) |
| | | F. Chart |
| | 16. | GMAC Records |
| | 17. | IRS Records |
| | 18. | Chesapeake business license |
| | 19. | A. Search Warrant (12/12/02) (not marked) |
| | | B. Lease - Wilson Road |
| | | C. New York parking ticket (8/2/02) |
| | | D. Janitorial contract |
| | | E. Travel documents - Moore |

Project Exile 9A Exhibit
1 of 4

Page 34 of 46

Filed: 08/30/2018   Document #1748426

USCA Case #18-5132



American Military University — Online Education for the national law enforcement and security community.

Home    Advertise    Milestones    Documents    Agencies    Jobs    Contact Us    About Us

**Get Our Newsletter**

Email Address [ Sign Up ]

**Resources**

My Criminal Justice Careers

 twitter

**Special Reports**

**An Analysis: The Illicit Prescription Drug Epidemic Just Keeps Getting Worse**



**FBI Files: A Peek Into Mobster Vito Giacalone's Cat-And-Mouse Game With the Feds**



**Part 2: What We Can Do to Confront the Threat of New Designer Drugs from China**



Read Past Reports

# Tag: clifford posey

## ATF Agent Gets 3 Years and 1 Month for Theft of Guns and Cigarettes



By Allan Lengel
ticklethewire.com

You'd think Clifford Dean Posey, an ATF agent, would have known of the old adage: Crime doesn't pay. Apparently not.

Posey, 43, of Chesapeake, Va., was sentenced Friday in Richmond, Va., to three years and one month in prison for stealing guns and cigarettes from ATF and selling them. The crimes began in 2007, authorities said.

He pleaded guilty in April to wire fraud, embezzlement, possessing or receiving stolen firearms, making a false statement and money laundering.

"When he became an ATF agent, Clifford Posey took an oath to uphold the law," U.S. Attorney Timothy J. Heaphy said in a statement. "Mr. Posey selfishly violated his oath and used his law enforcement power for personal gain. The law became an instrument of his greed, rather than a shield for those he was sworn to protect."

Posted: September 19th, 2011 under News Story.
Tags: ATF, cigarettes, clifford posey, gins, Richmond, timothy j. heaphy, U.S. Attorney
Comments: none

## Va. ATF Agent Under Investigation for Allegedly Stealing Tens of Thousands of Dollars of ATF-Owned Cigarettes



By Allan Lengel
ticklethewire.com

Federal authorities are investigating allegations that an ATF agent in Virginia stole tens of thousands of dollars worth of ATF-owned cigarettes and sold them, according to the Daily Press newspaper.

The agent Clifford D. Posey, 43, who is part of the Norfolk, Va. ATF office, has not been charged, but the allegations are contained in a federal search warrant affidavit written by J. Brian Burnett, a special agent with the Department of Justice's Inspector General's Office, the paper reported. The ATF-owned cigarettes are used as bait in stings.

The affidavit alleges that Posey of Chesapeake,Va., stole the cigarettes, moved them to a rented storage unit in Virginia Beach where he distributed the goods for money, the paper reported.

"Posey has ... used his position as an ATF Special Agent to facilitate the embezzlement of property belonging to the United States," the affidavit said. ATF said Posey has been suspended without pay since December, the paper reported.

The paper said Posey declined Tuesday to discuss the case.

To read more click here.

**Allan Lengel**
Justice Department's Seizure of Associated Press Phone Records is Disgusting!

**Ross Parker**
The Collision Between Drugs and Environmental Forces in Central America

**Greg Stejskal**
The History of April 19th: American Revolution, Waco, Oklahoma Bombing

‹ Columnists ›







A Detailed Man
David Swinson
Buy amazon.com from
Privacy Information

FREE 2-Day Shipping on Eligible Books
AmazonPrime™
FREE Trial!

Site Search
[ Search ]



Entire (RSS)
Comments (RSS)

Archive Calendar

**June 2013**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 |   |   |   |   |   |   |

« May

Case 1:16-cv-01275-RCL   Document 16   Filed 06/12/17   Page 67 of 76

6/19/13
Norfolk-based ATF agent pleads guilty in tobacco fraud case involving Hampton - Cigarettes reviews and tobacco news

# Cigarettes reviews and tobacco news

The best news and articles about tobacco industry

Home

05/05/2011

## Norfolk-based ATF agent pleads guilty in tobacco fraud case involving Hampton

Page 35 of 46

Filed: 08/30/2018

Document #1748426

USCA Case #18-5132



A Norfolk-based special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) pleaded guilty Monday in a tobacco and gun fraud case that got its start with suspicious Hampton police officers. Clifford D. Posey, 43, of Chesapeake, admitted as part of the guilty plea Monday that the embezzlement of tobacco and guns amounted to a loss to the government of $46,470. Posey was working with Hampton officers on stings into black market tobacco sales when the cops discovered Posey was having repeated interactions with one of the previous targets of their investigation.

More information was uncovered during an ensuing federal investigation, and Posey was indicted April 4 on 19 charges. He was arrested two days later. But only five days after his arrest, in a remarkably fast time period between arrest and guilty plea, Posey pleaded guilty Richmond Monday to five of the counts against him — one count apiece of wire fraud, embezzlement, possessing stolen firearms, making a false statement and money laundering. Posey admitted that he stole caseloads of government-owned cigarettes and sold them on the black market. "He used the proceeds for various purposes that were not authorized by ATF officials, including payments on a Chevrolet Suburban and tithing to his church," according to a statement of facts filed with the guilty plea. Posey also admitted that he certified that stolen guns were either returned to their owners or destroyed, "when in fact (Posey) had taken possession of those firearms." The other 14 counts are expected to be dropped as part of the guilty plea.

That includes six counts of embezzlement, four counts of filing false statements, two counts of receiving stolen goods and two counts of money laundering. The investigation into Posey began last fall after Hampton police officers — who were working with Posey on sting operations targeting sales of black-market cigarette sales — grew suspicious of him, according to an affidavit in the case. Through an email to the task force's cell phone, the Hampton cops discovered that Posey was having lots of contact with a man they previously investigated, the affidavit says. Later, the affidavit says, surveillance on Posey's privately rented storage unit in Virginia Beach showed the agent putting caseloads of government-owned cigarettes there, then having the buyer go there to pick them up — and leave behind thousands of dollars.

Posey had worked for the ATF for five years, and was an agent with the U.S. Air Force's Office of Special Investigations for five years. He will be sentenced July 29 before U.S. District Judge Robert Payne. "We have zero tolerance for corruption or criminal activity by any government employee and especially one of our own," said Acting Special Agent in Charge Rich Marianos, of the ATF Washington Field Division in Washington, D.C.

CARS   APARTMENTS   HOME DELIVERY   CLASSIFIEDS   PLACE AN AD

HOME   NEWS   SPORTS   HR MILITARY   SAVVY SHOPPER   OPINION   LIFE   ENTERTAINMENT   MARKET   YOUR STUFF

GLOUCESTER   HAMPTON   ISLE OF WIGHT   NEWPORT NEWS   SOUTHSIDE   WILLIAMSBURG   YORK   BUSINESS   CRIME   POLITICS   SCHOOLS   SPACE

Home > Collections

Recommend   1

## ATF agent lands three years in prison for embezzling cigarettes, guns

**Case against Cliff Posey began when Hampton police officers grew suspicious of him**

1   Tweet   0

September 16, 2011 | By Peter Dujardin, pdujardin@dailypress.com | 247-4749

A former Norfolk-based federal agent was sentenced Friday to 37 months in prison for stealing caseloads of government-owned cigarettes, selling them on the black market and pocketing the cash.

Clifford D. Posey, 43, of Chesapeake — once a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives — admitted as part of his guilty plea in April that he embezzled more than $46,000 in federal property.

### Public Arrest Records

1. Enter a Name & Search For Free. 2. View Background Check Instantly!

checkpeople.com/background

### Related Articles

Norfolk-based ATF agent pleads guilty in tobacco fraud case...

Norfolk-based ATF agent charged in cigarette fraud case...

Judge postpones sentencing for Norfolk-based ATF agent

22-year-old Sentenced To 160 Months

STORY: Federal ATF agent being investigated over Hampton...

Posey was working with Hampton police late last year on stings into black-market cigarette sales. As part of the effort, investigators would pose as black market sellers in a bid to ensnare wholesale buyers trying to avoid cigarette taxes.

But two Hampton police officers grew suspicious of Posey, the lead task force agent, after finding an e-mail to the task force cell phone indicating he was having repeated interactions with a man the task force had previously investigated.

An ensuing ATF investigation discovered that Posey was removing cigarettes by the caseloads from a local ATF warehouse and stocking them in his private storage unit in Virginia Beach. Then he'd have the buyer go retrieve the cigarette loads and leave behind envelopes full of cash.

Posey also admitted that he stole guns — creating documents saying that confiscated guns were destroyed or given back to their owners, when in fact he took them for himself.

Posey pleaded guilty in April to one count apiece of wire fraud, embezzlement, receiving stolen firearms, making a false statement and money laundering. He faced up to 65 years in prison under law, though sentencing guidelines called for him to get between 37 months and 46 months.

Prosecutors urged a sentence at the high end of the guidelines.

"They were not an isolated instance of bad judgment, but rather a calculated series of offenses that continued for three and a half years," Assistant U.S. Attorney Joseph Mott wrote in a court filing. "The offenses required stealth and guile to ensure they were not uncovered, and would likely have continued had not a task force officer noticed an odd email."

Posey's lawyer, William McMillan Powers, urged a sentence below the guidelines, citing Posey's eight years with the Air Force and five years with ATF. "Mr. Posey has lost everything he spent his life working to achieve," Powers wrote. "His life is irreversibly changed. He is significantly depressed and likely needs medication and therapy to re-balance

the emotional and intellectual aspects of his life."

Powers added that "despite his catastrophic failure, his family remains intact, and he has a fuller appreciation of his importance and significance to his family."

Senior U.S. District Judge Robert Payne, based in Richmond, gave him 37 months.

The U.S. Attorney's Office for the Western District of Virginia handled the case after prosecutors in the Eastern District recused themselves — in part because Posey's wife works for the federal prosecutor's office in Norfolk.

After the sentence, U.S. Attorney Timothy Heaphey said in a statement: "When he became an ATF agent, Clifford Posey took an oath to uphold the law. Mr. Posey selfishly violated his oath and used his law enforcement power for personal gain. The law became an instrument of his greed, rather than a shield for those he was sworn to protect."

## Securities Attorney

Securities is All We Do. 30 Years of Experience, SEC Lawyers

www.baldwinlawgroup.com

## Featured Articles



2013 gardening trends embrace meaning and purpose



Mortgage settlement checks on the way for Virginia borrowers foreclosed on during housing crisis



Think big when landscaping small spaces in your yard

MORE:

Someone may owe you money

Groupon offers deal on Great Wolf Lodge

Man charged with abusing second newborn

Medicare savings coming to Peninsula in July

Busch Gardens offers two-park summer pass for $99

Summer camps available for all ages in Hampton Roads


DAILY PRESS ⚙ MEDIA GROUP

Index by Keyword | Index by Date | Privacy Policy | Terms of Service

Filed: 08/30/2018        Page 37 of 46

Document #1748426

USCA Case #18-5132



**DEPARTMENT OF THE TREASURY**
**BUREAU OF ALCOHOL, TOBACCO AND FIREARMS**

# Firearms Technology Branch
# Report of Technical Examination

Firearms Programs
Division

Washington, D.C. 20226

Phone: (202) 927█████

TO:

Special Agent ███████████
Bureau of Alcohol, Tobacco, Firearms and Explosives
200 Granby Street
Suite 502
Norfolk, VA 23510

757-441-████

| | |
|---|---|
| DATE: | 3/24/03 |
| YOUR: | 768025-02-0042 |
| RE: | Rodney Reep |
| OUR: | ████████ |

DATE EXHIBITS RECEIVED: 3/5/03

DELIVERED BY: FedEx 792202153564

TYPE OF EXAMINATION REQUESTED:

Test, Examination, Classification

**EXHIBITS:**

1. Remington, Model 29A, 12-gauge, slide-action shotgun, no serial number.

**FINDINGS:**

Exhibit 1 is a Remington, Model 29, 12-gauge slide-action shotgun. Exhibit 1 was manufactured as a shotgun by Remington Arms Company, Incorporated of Ilion, New York. Exhibit 1 was lawfully manufactured without a serial number. The markings on the barrel and frame indicate the following:

| | |
|---|---|
| "R.E.P." in an oval: | Remington Proof Mark. |
| "DX": | Barrel code indicating manufacture date September 1929. |
| "MODEL 29": | Model designation. |

Test firing was conducted on March 24, 2003, at the ATF test range facility in Washington, D.C. Test firing disclosed that Exhibit 1, with one round of commercially available 12-gauge shotgun ammunition, test fired successfully.

**CONCLUSIONS:**

Exhibit 1 is a "firearm" as defined in Title 18, United States Code (U.S.C.), Chapter 44, § 921(a)(3).

Exhibit 1 was not manufactured in the Commonwealth of Virginia.



Firearms Enforcement Officer



804-674-████



b2/7c


(145)

15. CERTIFICATION OF SPECIAL AGENT: I certify that this list contains a full description of all the personal property taken into Bureau custody from the person named in the above-mentioned case.

| SIGNATURE OF SPECIAL AGENT | DATE |
|---|---|
| ███████  ██████████  Task Force Officer, Norfolk Field Office | 03/04/2003 |

16. APPRAISAL BY SEIZING OFFICER

I certify that under the authority of 19 U.S.C., or ATF O 3400.1, as seizing officer, I have made a careful survey and examination of the property described above and to the best of my judgement and belief, each item of said property is of the value stated opposite its respective description, and that the aggregate value of all of said property is shown on the "Total" line and have appraised items No.:

| SIGNATURE | DATE |
|---|---|
|  |  |

17. THIS INVESTIGATION IS ONGOING THEREFORE NO NOTICE SHOULD BE SENT TO ANY PARTIES INVOLVED.

☐ **WITHHOLD NOTICE FROM ALL PARTIES**

18a. TRACE INFORMATION WAS FORWARDED TO THE NATIONAL TRACING CENTER

(If no, an explanation is required in the "Remarks" section)     ☐ YES     ☐ NO

18b. NATIONAL FIREARMS REGISTRATION AND TRANSFER RECORDS WERE QUERIED

(If no, an explanation is required in the "Remarks" section)     ☐ YES     ☐ NO

19. REMARKS/DISPOSITION REQUEST

"Seized for evidence"

Approval is requested to return Item 1 to DEA TFA ████████████. Item has been returned from the ATF Lab.

FINAL DISPOSITION RECOMMENDATION     DATE: 11/12/03

☐ DESTRUCTION OF ITEM NUMBER(S)

☐ PLACEMENT INTO OFFICIAL USE OF ITEM NUMBER(S)

☑ RETURN OF ITEM NUMBER(S)  1

TO: Special Agent in Charge
(NAME)
Washington Field Division

(ADDRESS)

| SPECIAL AGENT: ██████████████ | DATE: 11·12·03 |
|---|---|

| I CONCUR 11/12/03 | | I CONCUR 11/26/03 | M M Bisgnard Jr. |
|---|---|---|---|
| DATE | RAC/GS | DATE | SPECIAL AGENT IN CHARGE |

b7C

ATF EF 3400.16 (3-98)

(143)

Filed: 08/30/2018     Document #1748426     USCA Case #18-5132     Page 39 of 46

# DEPARTMENT OF T. TREASURY
## BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
# REQUEST FOR ADVANCE OF FUNDS
*(For Investigative Purposes)*

**INVESTIGA** **NUMBER**

768025 — 02 — 0042

TO: AGENT CASHIER
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
_Washington_ , FIELD DIVISION

**SUB-VOUCHER NUMBER**

## PART I - GENERAL INFORMATION

SUSPECT'S NAME AND ADDRESS (Street, city, State and ZIP Code)

_Rodney Keef_
_(Incarcerated in Prison)_

| FUNDS ARE REQUESTED DIRECTLY FROM (Check one) | ✓ | SUBCASHIER |
| --- | --- | --- |
| | | HQ CASHIER *(Chief)* |

### FUNDS INTENDED USE

| FIREARMS TITLE I/TITLE II | ARSON/EXPLOSIVES | INFORMANT/ INVESTIGATIVE | CONTROLLED SUBSTANCE |
| --- | --- | --- | --- |
| SILENCERS | ARSON | INVESTIGATIVE EXPENSE | HEROIN |
| MACHINEGUNS | HIGH EXPLOSIVES | PURCHASE INFORMATION | COCAINE |
| STOLEN FIREARMS | LOW EXPLOSIVES | INFORMANT SUBSISTENCE | CRACK COCAINE |
| RIFLES/SHOTGUNS | BLASTING AGENTS | NRT SUPPORT | MARIJUANA |
| PISTOLS/REVOLVERS | DESTRUCTIVE DEVICE | PEN REGISTER | METHAMPHETAMINE |
| SHORT BARREL FIREARMS | ILLEGAL EXPLOSIVE DEVICE | TITLE III | ALCOHOL/TOBACCO |
| OTHER *(Explain)* | OTHER *(Explain)* | X OTHER *(Explain)* | OTHER *(Explain)* |

EXPLAIN/JUSTIFICATION

_Funds requested_
_approved application_
_attached)._

## PART II - SUB CASHIER FUNDS REQUEST AND APPROVAL

In connection with the above investigation, I request that an advance of funds, in the sum of $ 2500.00 be issued to me by the sub cashier to be used for the purchase of information, and/or the purchase of evidence.

| SPECIAL AGENT | DATE 03 | TOTAL FUNDS EXPENDED IN THE CASE TO DATE $ 738.99 |
| --- | --- | --- |
| GROUP SUPERVISOR OR RESIDENT AGENT IN CHARGE | DATE 03 | AMOUNT APPROVED *(Write out)* Two Thousand five hundred $ 2500.00 |

## PART III - DISBURSEMENT/RECEIPT OF FUNDS

| SUB CASHIER OR ALTERNATE | DATE 03 | AMOUNT DISBURSED *(Write out)* Two Thousand five hundred $2500.00 |
| --- | --- | --- |
| SPECIAL AGENT | DATE 03 | AMOUNT RECEIVED *(Write out)* Two Thousand five hundred $ 2500.00 |

## PART IV - RETURN OF FUNDS AND/OR EXPENDITURE

| RECEIPT OF FUNDS *(Signature of sub cashier/alternate)* | DATE 03 | AMOUNT OF FUNDS RETURNED *(Write out)* Zero $ 0 |
| --- | --- | --- |
| SPECIAL AGENT'S SIGNATURE | DATE 03 | AMOUNT OF FUNDS EXPENDED *(Write out)* Two Thousand five hundred $2500.00 |

AGENCY EXPENSE FUNDS

b2/7C

DATE

DATE ②19

Exhibit 15: Request for Advance Funds, Application and Public Voucher for Reward.

DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
# REPORT OF EXPENDITURES
*(For Investigative Purposes)*

| | |
|---|---|
| INVESTIGATION NUMBER | 768025 - 02 - 0042 |

TO:   AGENT CASHIER
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
_____, FIELD DIVISION

SUB-VOUCHER NUMBER ▮▮▮▮▮▮▮▮▮▮▮▮

## ITEMIZATION

| DATE | EXPLANATION OF EXPENDITURE *(Explain exact nature of EXPENDITURE and results achieved; describe evidence purchased, including persons involved and any other pertinent remarks.)* | AMOUNT EXPENDED |
|---|---|---|
| ▮▮ | *Funds expended* ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ | 2500.00 |
| | 738.99 | |

| | |
|---|---|
| TOTAL OF ABOVE EXPENDITURES | 2500.00 |
| TOTAL OF ALL AGENT CASHIER EXPENDITURES TO DATE | 3238.99 |

| | | |
|---|---|---|
| SPECIAL AGENT ▮▮▮▮▮▮▮▮▮ | DATE ▮▮03 | |
| GROUP SUPERVISOR OR RESIDENT AGENT IN CHARGE *(Approved by)* ▮▮▮▮▮▮▮▮ | DATE ▮▮03 | |
| SPECIAL AGENT IN CHARGE *(Reviewed by)* ▮▮▮▮▮▮▮ | DATE ▮▮03 | |

b2/7C

(R20)

**DEPARTMENT OF THE TREASURY**
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
## APPLICATION AND PUBLIC VOUCHER FOR REWARD

I, ▓▓▓▓▓▓▓▓▓▓ , submit to the Division Director, Washington

*(Name of Claimant)*

Field Division, through his/her representative, Task Force Agent ▓▓▓▓▓▓▓ information concerning

*(Name, Title and Field Office)*

violations within the jurisdiction of the Bureau of Alcohol, Tobacco and Firearms, in accordance with laws and regulations for this original information, furnished on the ▓▓ day of ▓▓▓▓▓▓ , 20 01 . I was not an employee of the Department of the Treasury at the time I came into possession of the information nor at the time I divulged it. Under penalties of perjury, I declared that I have examined this application, including my accompanying statements, if any, and to the best of my knowledge and belief, it is true, correct, and complete.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ 7/30/03

*(Signature of Claimant)* *(Date)*

Justification for payment: *(State information supplied; type and magnitude of violation; name(s) of person(s) arrested, seizures made, and other pertinent information which will substantiate and support the recommended reward.)*

On ▓▓▓▓▓ 2001, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Norfolk Police Department Vice & Narcotics Division relative to illegal activities of Rodney Reep, DOB: 02-25-61, 1265 Reservoir Avenue, Norfolk, Virginia, who unlawfully possessed firearms and distributed cocaine hydrochloride, cocaine base and heroin. On ▓▓▓▓▓ , 2001, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Norfolk Police executed a state search warrant at Reep's residence and seized 87 grams of cocaine base, 33 grams of cocaine hydrochloride, 1 gram of heroin and various rounds of ammunition. On January 3, 2002, ATF Norfolk Field Office adopted the Reep case from the Norfolk Police Department. On March 22, 2002, Reep was indicted on a 5 counts in the Eastern District of Virginia. On November 14, 2002, Reep went to trial that ended in a mistrial after the first day. A new trial date was set for December 11, 2002. ▓▓▓▓▓▓▓▓ 2002, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ residence and family. On December 11, 2002, Reep went to trial that ended in a mistrial. A new trial date was set for March 17, 2003. ▓▓▓▓▓▓ 2003, ▓▓▓▓▓▓▓▓▓ ATF regarding Reep's involvement with ▓▓▓▓▓▓▓▓▓▓▓ case the FBI and DEA were jointly working. ▓▓▓▓▓▓ Conspiracy. The indictment included thirteen defendants on fifty-four counts. ▓▓▓▓▓▓United States Attorney's Office with a superseding indictment which included Reep with the ▓▓▓▓▓▓▓▓▓ were ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ against Reep. On this date, ▓▓▓▓▓▓▓▓▓▓▓ 2003, New trial date was set for July 1, 2003. ▓▓▓▓▓▓ 2003, On July 1, 2003, Rodney Reep, ▓▓▓▓▓▓▓▓▓▓▓ went to trial. On July 10, 2003, ▓▓▓▓▓ testified against the defendants. On July 18, 2003, the jury returned a guilty verdict for all counts against the three defendants. ▓▓▓▓▓▓▓▓▓▓▓ On October 27, 2003, Reep will be sentenced on Title 21 USC 846 Conspiracy to Distribute 50 Kilograms of Cocaine Hydrochloride, Title 21 USC 841 (a) (1) Distribution of more than 50 grams of Cocaine Base, Title 21 USC 841 (a) (1) Distribution of more than 100 grams of Cocaine Hydrochloride, Title 21 USC 841 (a) (1) Distribution of less than 100 grams of Heroin, Title 21 USC 841 (a) (1) Distribution of less than 50 grams of Cocaine Base, Title 21 USC 841 (a) (1) Distribution of less than 50 grams of Cocaine Base and Title 18 USC 922 (g) (1) Felon in Possession of Ammunition. Based on the defendants criminal history, Reep, ▓▓▓▓▓ are facing Life sentences.

*(Continue On Reverse)*

| SPECIAL AGENT *(Signature)* | FIELD OFFICE Washington/Norfolk | DATE 07/30/2003 | AMOUNT RECOMMENDED $2,500.00 |
|---|---|---|---|
| RECOMMENDED APPROVAL BY | | DATE | AMOUNT |
| GS/RAC *(Signature)* | | ▓▓▓ 03 | $2,500.00 |
| APPROVED BY | | | |
| DIVISION DIRECTOR *(Signature)* ▓▓▓ DSRC | | ▓ /03 | $2500.00 |
| DEPUTY ASSISTANT DIRECTOR (FIELD OPERATIONS) *(Signature)* *(If required)* | | | |

| IN | ACCOUNTING CLASSIFICATION | CHECK NUMBER |
|---|---|---|
| | | |

ATF F 3200.13 (12-98) PREVIOUS EDITIONS ARE OBSOLETE

Special agents will review the following instructions and tear this sheet from the form before presenting it to the informant/claimant.

1. ATF F 3200.13 will be prepared reflecting the name of the vendor (*informant/claimant*) and the justification for the payment of the reward.

2. Justification shall include, at a minimum, a narrative description of the violations, the magnitude of violations, the names and criminal records/ reputations of the persons arrested, the seizures of any property, and other pertinent information that will substantiate and support the recommended reward.

3. The vendor must sign the ATF F 3200.13 in INK. The vendor's name will be typed below his or signature and must be identical to the vendor's signature. If the vendor signs with an "X," then the mark must be witnessed by two special agents, whose names must be legibly signed in ink on all copies of the ATF F 3200.13; the appropriate confidential identity code will be documented under the mark.

4. The special agent will not enter the amount recommended until after the vendor has signed the form, and no promises will be made concerning the amount of the reward.

5. The special agent will submit the original and copies of ATF F 3200.13 to his or her immediate supervisor for review. The resident agent in charge/ group supervisor will review the ATF F 3200.13, make a recommendation of amount, sign, and forward to the division director.

6. The division director can approve payment of rewards of $10,000 or less. The reward, if approved, will be processed within 2 weeks of receipt by the division director. Rewards in excess of $10,000 must be approved by the appropriate deputy assistant director (Field Operations).

7. On requests of payments in excess of $10,000, the division director will recommend approval by signing and dating both copies of the ATF F 3200.13. The division director will then forward the copies to the appropriate deputy assistant director (Field Operations), who will either approve or disapprove the request. The documents will be transmitted in double-sealed envelopes.

ATF F 3200.13 (12-98)

Filed: 08/30/2018      Page 43 of 46      Document #1748426      USCA Case #18-5132

Filed: 08/30/2018     Document #1748426     USCA Case #18-5132

# DEPARTMENT OF THE TREASURY
### BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
## PAYMENT RECEIPT FOR INVESTIGATIVE EXPENSES, INFORMATION, AND/OR TREASURY CHECK

| DATE RECEIVED | RECEIVED FROM (Name and Title) |
|---|---|
| ▓▓▓ 03 | T F A ▓▓▓▓▓▓▓▓▓▓ |

| AMOUNT RECEIVED | AMOUNT RECEIVED (Written in Words) | | |
|---|---|---|---|
| $2500.00 | Two thousand five hundred | AND | 00/100 |

| METHOD OF PAYMENT | | | IF CHECK OR MONEY ORDER, SHOW NUMBER AND OTHER IDENTIFYING DATA |
|---|---|---|---|
| ☑ CASH | ☐ CHECK | ☐ MONEY ORDER | |

| INVESTIGATIVE EXPENSES ☑ ▓▓▓ | | |
|---|---|---|
| ☐ SUBSIS-TENCE | ☐ OPERATING EXPENSES | ☐ MISC. EXPENSES |

| CASE NUMBER | RECEIVER'S PRINTED NAME AND SIGNATURE |
|---|---|
| 768025-02-0042 | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ |

| WITNESS (Name and Title) | |
|---|---|
| ▓▓▓▓▓▓▓  TFA ATF ▓▓▓▓▓▓▓▓▓▓ | SA ATF |

ATF F 3251.1 (10-96)  PREVIOUS EDITION IS USEABLE

(223)

# CRIMINAL COMPLAINT

U.S. Department of Justice
*United States Attorneys*

USAO No. 2022R00652
Court Docket No. 2:22CR52
DJ File No. TDM NO2-034   G5#02-1

The contents of this file are subject to the provisions of the Privacy Act of 1974 (5 U.S.C. 552)

District of: Virginia
Division: Eastern
County: Norfolk
1

Defendants:    Defense Counsel:

| No. | | Arrest | Arra'm't | Plea | Bond (amt., date, surety) |
|---|---|---|---|---|---|
| 1 | Rodney Keep | | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |
| 8 | FILE: No | | | | |

Nature of Offense: Build Conceal Boat (Concaled Alteration of Conversation)
Assigned to: Michaell Moon
See also File No.
Date of Offense
Code Sections 21 usc §§841(a)(1); 21 usc §829(a)(1)
Stat. of Limitations
Gov't Agency FILE: C: 619-J

| Date | Code | Remarks | Initials |
|---|---|---|---|
| | | | |

Closed    Date    Initials





**PRIORITY MAIL**

UNITED STATES POSTAL SERVICE

*Visit us at usps.com*

Label 107R, January 2008

U.S. POSTAGE PAID
PB 2.0 P/T
MINERSVILLE, PA
17954
AUG 28, 18
AMOUNT
**$0.00**
R2305K141057-08

20001

1006

UNITED STATES POSTAL SERVICE

<->53762-083<->
District Court Office
District Court House
U.S District Court House
333 Constitution AVE NW
Court Of Appeal
Washington, DC 20001
United States





**CERTIFIED MAIL**

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7722 0572 0000

4-B

Minersville, PA 17954-0759

Mailed from
Federal Correctional Institution
Schuylkill, PA